Jeremy I. Lessem (Bar No. 213406)
Lessem Newstat & Tooson LLP
jeremy@lnlegal.com
3450 Cahuenga Blvd, Unit 102
Los Angeles, CA 90068
Telephone: (818) 582-3087
Fax: (818) 484-3087

*Attorney for Defendant Kristopher Chase Malilay*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>KRISTOPHER CHASE MALILAY,<br><br>*Defendant.* | Case No.: CR 23-427-GW-2<br><br>**DEFENSE SENTENCING MEMORANDUM**<br><br>Sentencing Date: Feb. 3, 2025<br>Sentencing Time: 8:00am |

**TO THE HONORABLE GEORGE WU, UNITED STATES DISTRICT JUDGE, THE UNITED STATES ATTORNEY'S OFFICE AND ITS ATTORNEY OF RECORD, ASSISTANT UNITED STATES ATTORNEY ALEXANDRA JULIA SLOAN KELLY, AND UNITED STATES PROBATION OFFICER MAYTEE ZENDEJAS:**

    Defendant Kristopher Chase Malilay (hereinafter the "***Defendant***"), by and through counsel of record, Jeremy I. Lessem, hereby files Defendant's Sentencing Memorandum in the above-entitled matter.

1

Dated: January 27, 2025      Respectfully submitted,

By:   //s// Jeremy I. Lessem
JEREMY I. LESSEM
Attorney for Defendant

# I.

# INTRODUCTION

### A. Mr. Malilay's Difficult Upbringing in Lompoc, California

Defendant Kristopher Chase Malilay has no recollection of ever meeting his father. According to what his mother told him, his father left when he was about four years old. His father never called on Mr. Malilay's birthday or picked him up for outings to the park. Rather, Mr. Malilay was raised by his mother in a poverty stricken and gang infested area of Lompoc, California. His mother worked cleaning houses and later doing housekeeping work at a nearby resort. While Mr. Malilay's basic needs for food, clothing and shelter were met, he always felt like the family was barely scraping by. Raised with three younger half-sisters, Mr. Malilay felt responsible for his siblings and would help his mother cook and clean while she was out earning money.

When Mr. Malilay was about ten years old his mother started dating a man by the name of Gabrial Ochoa. Mr. Malilay can remember his feelings of optimism when Ochoa first joined the household. With a man in this house, Mr. Malilay felt like maybe he could go back to being just a kid again. There would be someone else around to help run the house, get his sisters to school, maybe even help with homework. And maybe with a second income, he could get new clothes he never had and the video game console that it seemed like all his friends were playing.

Unfortunately, instead of things getting better with Mr. Ochoa's arrival, they got worse. Mr. Ochoa didn't work. Instead, he claimed he had medical issues that forced him to stay home. He also had no interest in helping raise Mr. Malilay and his sisters. Instead, at least as far as Mr. Malilay could tell, he saw Kristopher and his sisters as a nuisance. Instead of helping with homework, Mr. Ochoa would regularly lock Mr. Malilay out of the house. At times, forcing him a sleep on the front porch until his mother returned from a late night shift at the resort. Mr. Malilay continued to cook dinners for himself and his sisters, eventually learning to enjoy his growing skills in the kitchen. Rather than providing a second income, Mr. Ochoa's presence in the household only served to further burden the already financially strapped family. His mother eventually took a second job and Mr.

Malilay, and his sisters got to see her even less. Perhaps worse of all, Mr. Ochoa physically abused Mr. Malilay's mother. Not in front of him and his sisters, but they could hear it. Mr. Malilay knew what was going on and felt helpless to stop it.

By the time Mr. Malilay turned fifteen years old, the situation at his mom's house was untenable. Mr. Ochoa's desire to control everything that went on the house was getting worse and worse. No one could come or go without his permission and the slightest perceived transgressions could result in being locked out of the house, denied food or verbal abuse. Financially, it also didn't seem like the family could continue to survive on his mother's salary alone. As a result, Mr. Malilay left home and moved in with his maternal aunt. At the time, Mr. Malilay's aunt had a spare bedroom, and he enjoyed spending time with his aunt and his cousins. While he missed being around his mom and sisters, in many ways, Mr. Malilay felt enormous relief being away from the constant stress and tension at his mother's house.

About two years after leaving for his aunt's house, Mr. Malilay's mother finally mustered the courage to leave Mr. Ochoa for good. So, when Mr. Malilay was sixteen years old, his mother and sisters joined him at his aunt's house. While it was an enormous relief for Mr. Malilay to be back under the same roof as his mom and sisters, it was also clear to him that this new living situation couldn't last long. With the new additions, there were now ten people living in a four-bedroom house. It was simply too crowded. So, at the age of seventeen Mr. Malilay started working two jobs, one at the Alisal Ranch washing dishes and the other as a laborer at a vineyard outside of Solvang. Eventually, Mr. Malilay was promoted to cook and began working full-time at the restaurant at Alisal Ranch. While the work was long and grueling, his job in the kitchen fulfilled a passion he had developed while making food for himself and his sisters as a young boy. Mr. Malilay's goal was to make enough money to get an apartment for himself, his mother and his three sisters.

Despite working as hard as he could, Mr. Malilay eventually resigned himself to the fact that he would never earn enough to help his family. This realization, combined with the lack of guidance from a father figure in his life, eventually led Mr. Malilay down a path of making a series of poor and regrettable decisions. Predictably, Mr. Malilay looked for

guidance and acceptance from the streets. He began hanging out with the wrong crowd and eventually began getting involved with drugs and gangs. While Mr. Malilay did manage to graduate high school, he gradually spent more and more time with individuals associated with a local gang. They made him feel accepted and convinced Mr. Malilay that he was never going to be able to afford anything working full-time at a hotel. Additionally, Mr. Malilay started to smoke marijuana daily (a habit he had started around the time he left his mom's house).  Eventually, Mr. Malilay became interested in firearms as a way of earning the extra money he needed to provide his mother and sisters with a better life.

At the age of eighteen, Mr. Malilay had made enough money to move out of his aunt's house and to bring his mother and sisters with him. He knew that what he was doing to earn the extra money to make this happen was wrong. However, he felt desperate. Mr. Malilay didn't think his aunt was going to let his family stay with her much longer and he didn't want to see the people he loved end up on the streets. Mr. Malilay regrets his choices and understands the desperation to help his family is not an excuse.

### B. The Death of Mr. Malilay's Best Friend Erik

In addition to the difficult childhood described above, another influential event in Mr. Malilay's life was the death of his best friend Erik when Mr. Malilay was just fifteen years old. On the day of this incident, Mr. Malilay and Erik were hanging out near a friend's house with a couple of other people after school. Mr. Malilay left briefly to walk to a convenience store around the corner to buy some chips for the two of them. While just outside the store, Mr. Malilay heard a series of noises that he immediately believed were gunshots. The noise was coming from where he had just left. Instinctively, Mr. Malilay sprinted back in the direction of Erik, who he found lying on the ground bleeding along with two other individuals that had also been shot. Mr. Malilay watched helplessly as Erik passed away in front of him while they waited for the paramedics to arrive.

After the shooting, families of the victims set up a makeshift shrine in the area where the shooting had taken place. They placed candles and flowers in the area, and friends and neighbors would get together at night and after work to mourn. For two weeks Mr. Malilay hardly left. Friends and family would bring him food and they had to beg him

at night to go home and get some sleep, only for him to return first thing in the morning. Erik was Mr. Malilay's closest friend, and his death was devastating. Mr. Malilay was riddled with guilt of not being there with Erik when the shooting took place. Of course, it's impossible to know if Mr. Malilay's choices in life would have been different had Erik not died in front of him that day but the impact of what happened cannot be overstated.

### C. Future Aspirations

Mr. Malilay stands before this Court as an eighteen-year-old young man with his entire life ahead of him. Mr. Malilay has zero criminal history points and finds himself facing real criminal consequences for the first time in his life. He has spent the last 16 months in custody, thinking about his choices and realizing that this is not the life he wants to live. Despite a difficult upbringing, Mr. Malilay has a high school diploma and a passion for cooking. Upon his release from custody, Mr. Malilay hopes to return to his job as a cook at the Alisal Resort and continue to learn his trade. Eventually, he hopes to start his own food truck business. Mr. Malilay is ready to turn his life around and pursue his dreams. He asks this Court for the opportunity to prove that his arrest and jail time in this case has been the wake-up call he needed.

## II.
## PROCEDURAL BACKGROUND

### A. The Plea Agreement

On October 3, 2024, Defendant plead guilty to Counts one and twelve of a sixteen-count indictment. Count one charges a violation of conspiracy to engage in the business of dealing firearms without a license, in violation of 18 U.S.C. § 371, 18 U.S.C. §922(a)(1)(A). Count Twelve charges a violation of possession of an unregistered firearm in violation of 26 U.S.C. §924(a)(1)(A). In the plea agreement, the Defendant and the government agreed to a base offense level of 18. The parties further agreed to a 4-level increase based on the number of firearms involved pursuant to U.S.S.G. §2K2.1(b)(1)(B) as well as an additional 4-level increase for a firearm having an altered or obliterated serial number pursuant to U.S.S.G. §2K2.1(b)(4)(B). Finally, the plea agreement further contemplates a 3-level reduction for acceptance of responsibility. The parties reserved the

right to argue for a sentence outside the applicable range established by the Guidelines as well as the right to argue specific offense characteristics, adjustments and departures that may apply.

Based on the above calculations, the plea agreement contemplates a total adjusted offense level of 23. Assuming a criminal history category of I, the applicable guideline range contemplated in the plea is 46-57 months. The government also agrees in the plea agreement to not recommend a sentence above the low-end range of the guidelines provided the offense level used by the Court is 23 or higher.

B. The Presentence Investigation Report

On December 19, 2024, United States Probation Officer Maytee Zendejas filed a Presentence Investigation Report (PSR) in this matter. The PSR calculation of Mr. Malilay's base and adjusted offense levels mirrors that of the plea agreement. Additionally, the PSR calculates criminal history category I, based on no criminal history points. This results in an applicable guideline range of 46-57 months. Officer Zendejas did not identify any factors that warrant either a departure or variance from the applicable sentencing guideline range.

C. Defense Objections to Presentence Investigation Report

(1) Defendant objects to Officer Zendejas' determination that Mr. Malilay's youthful age does not warrant a departure from the otherwise applicable guideline range as described in U.S.S.G. §5H1.1. The Defendant's basis for the applicability of this objection is described more fully below.

(2) Defendant objects to the inclusion of ¶ 65 of PSR and hereby moves to strike the portion of the PSR from the record. This paragraph purports to show that Mr. Malilay was arrested by the Lompoc Police Department for various charges, including unlawful possession of a firearm, resisting arrest and murder. The inclusion of this information is misleading. The reality is that Mr. Malilay was present, along with several other individuals, at a friend's residence when a search was conducted by law enforcement. During the search a firearm was recovered. While Mr. Malilay was briefly detained, he was released the same night to the custody of his mother with the need for bail. He was never

charged. Mr. Malilay had no connection to the firearm recovered and that firearm was never connected to any specific crime. Given these facts ¶ 65 provides no relevant information and should be stricken from the report.

D. <u>Minimum and Maximum Possible Sentence</u>

The two counts pled to in the indictment in this case carry a combined maximum sentence of 15 years' imprisonment, three years of supervised release and a maximum fine of $250,000. There is no mandatory minimum term of imprisonment.

E. <u>Defendant's Financial Condition and Inability to Pay a Fine</u>

Defendant agrees with the assessment in the PSR that Mr. Malilay has no present ability to pay an immediate fine in this case and requests no fine be imposed based on lack of income.

## III.
## DEFENSE SENTENCING RECOMMENDATION

For the reasons discussed herein, the defense respectfully recommends a time served sentence of 17 months and 20 days, followed by an additional 36 months of supervised release. The defense recognizes this is below the guideline range calculated by Probation of 46-57 months. The requested sentence is based on the factors cited in this memorandum, including a variance resulting from the Defendant's personal history and characteristics, lack of any criminal history and the factors set forth in 18 U.S.C. § 3553(A). The Defendant also cites the applicability of a departure because of his youthful age pursuant to U.S.S.G. §5H1.1.

## IV.
## DEFENDANT SHOULD RECEIVE A DOWNWARD DEPARTURE UNDER U.S.S.G. § 5H1.1

U.S.S.G. § 5H1.1 reads in pertinent part as follows:

"A downward departure [also] may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of

educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation."

Here, Mr. Malilay was 18 years old at the time he committed the offenses charged. Additionally, he suffered substance abuse issues related to his use of marijuana and lacked a familial relationship with his father who permanently abandoned him at five years of age. In the absence of a father figure in his life, Mr. Malilay became increasingly susceptible to the outside influence of the gang members that permeated his neighborhood. All these factors were instrumental in causing the charged conduct to take place and warrant a downward departure pursuant to U.S.S.G. § 5H1.1.

## IV.

## SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(A)

A. General Sentencing Principles

In light of *United States v. Booker*, 125 U.S. 738 (2005), the sentencing guidelines are advisory and are but one factor to be considered by the Court in fashioning an appropriate sentence, to wit, a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a). The Sentencing Guidelines are only a starting point for the Court in crafting a reasonable sentence. Indeed, under Section 3553(a), the district courts are required to sentence below the range if such a sentence would be sufficient to achieve the purposes of sentencing. As a result, the sentencing guideline range is no longer binding on the Court, as the Sentencing Guidelines are merely advisory today and only one of several factors to be considered in determining sentence. *Booker*, 124 S.Ct. at 764-65. 18 U.S.C. Sections 3553(a) (1)-(7) provide the Court with other factors to include in the fashioning of a reasonable sentence:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced (***the Sentencing Guideline Range***);

5. any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. Section 994(a)(2) that is in effect on the date that defendant is sentenced;

6. the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to victim(s) of the offense.

*Id., 18 U.S.C. Sections 3553(a) (1)-(7)*.

    Although the Sentencing Guidelines provide a starting point for the Court's sentencing analysis, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States,* 552 U.S. 38, 50 (2007). The Court's ultimate duty is to ensure that the sentence imposed reflects the principles set forth in 18 U.S.C. §3553 (a). *See Nelson v. United States,* 555 U.S. 350, 351 (2009). The "overarching provision" of §3553 (a) is "to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the sentencing goals advanced in §3553 (a) (2)." *Kimbrough v. United States,* 552 U.S. 85, 111 (2007). What is more, "the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (quoting *Williams v. New York*, 377 U.S. 241, 247 (1949).)

B. Remorse and Acceptance of Responsibility

Mr. Malilay understands the seriousness of his actions and deeply regrets participating in the unlawful sale of firearms. He has accepted responsibility for his conduct and taken full responsibility for his actions. Mr. Malilay will make a further statement to the Court at the time of sentencing.

C. Seriousness of the Offense

The defense recognizes that the unlicensed sale of firearms is an extremely serious crime. Mr. Malilay understands that due to the seriousness of the offense, despite being only 18 years old and having no prior criminal history points, he has already served more than 17 months in federal custody because of his conduct.

D. Respect for the Law and Deterrence

While Mr. Malilay has no criminal history points, he acknowledges a couple of incidents as a minor that demonstrate poor choices that were made at a young age. However, this case serves as the first real legal issue Mr. Malilay has experienced in his life. In his first custodial experience, Mr. Malilay has now served more than 17 months in jail. This time has served as a wake-up call for Mr. Malilay. Seeing what life behind bars is like has been an eye-opening experience and something Mr. Malilay does not want to ever experience again. As such, the time Mr. Malilay has served in custody has already served as a sufficient deterrent.

E. Sufficiency of the Proposed Sentence

The approximately 18-month sentence recommended by the defense constitutes an enormous amount of time in the eyes of Mr. Malilay. Prior to this case, he never served more than a couple of weeks in custody and never in an adult detention facility. This time away from his mother and sisters has been extraordinarily difficult. Mr. Malilay knows his family relies of him. Not just financially, but as the de facto protector and man of the house. He needs to be there for sisters. He knows that as hard as this time away has been for him, and it has been even harder for those that love and care about him. Additionally, while Mr. Malilay completely understands there is no justification for the poor choices he

11

made, he was motivated by the need to financial support his family, who found themselves in real danger of is having a stable place to live.

F. <u>Disparity in Sentencing Among Similarly Situated Defendants</u>

Given Mr. Malilay's young age and lack of prior criminal history, the proposed sentence should not create a disparity among other defendants who are similarly situated. The requested sentence acknowledges Defendant's lack of criminal history, offense conduct, and Mr. Malilay's difficult upbringing. Including growing up without a father and watching his best friend literally die right in front of him after being shot.

G. <u>Protection of the Public</u>

As stated previously, Mr. Malilay's activity engaging in the sale of firearms is over. Upon his release, Mr. Malilay has a job waiting for him where his mother works at Alisal Ranch as a cook. He will go back to helping to support his family while working towards his goal of owning his own food truck business. Mr. Malilay never wants to be separated from his family again and will never engage in conduct that puts his freedom at risk.

## V.
## CONCLUSION

After full analysis of the sentencing factors in this case, the information provided by the defense and probation, the Defendant requests that the Court impose the following sentence and make the following recommendations:

1. No more than 17 months and 20 days of imprisonment;
2. 3 years supervised release; and
3. Imposition of no fine.

Dated: January 27, 2025                                    Respectfully submitted,


                                                    /s/ Jeremy Lessem
                                                  JEREMY LESSEM
                                                  Attorney for Kristopher Chase Malilay